# EXHIBIT A

 Proskauer Rose LLP   2049 Century Park East, 32nd Floor   Los Angeles, CA 90067-3206

January 5, 2015

Via FedEx

Robert H. Horn
Senior Counsel
d 310.284.5649
f 310.557.2193
rhorn@proskauer.com
www.proskauer.com

Mr. Craig Banaszewski
VIP Concierge, Inc.
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210

Re:    National Academy of Recording Arts & Sciences, Inc.: Unauthorized Sale of
       GRAMMY® Awards Telecast Tickets

Dear Mr. Banaszewski:

We are outside litigation counsel for the National Academy of Recording Arts & Sciences, Inc.
(The Recording Academy®). The Recording Academy presents the internationally renowned
GRAMMY® Awards telecast.

In January 2012, The Recording Academy demanded that you and your company VIP
Concierge, Inc. (VIP Concierge) cease attempting to resell or otherwise commercially exploit
tickets to the GRAMMY Awards telecast. The Recording Academy informed VIP Concierge
and you that the GRAMMY Awards telecast is a private, invitation-only event open to The
Recording Academy's members and their invited guests, and other authorized ticket holders
(collectively, the "Authorized Holders"). The Recording Academy further informed VIP
Concierge and you of its ticket policy printed on the back of each ticket:

> This ticket is a revocable license intended for use only by the
> original purchaser and purchaser's invited guest(s) ("Holder").
> This ticket may not be transferred or resold and the rights granted
> herein may not be assigned. *No promotional, commercial,
> advertising or other trade use may be made without the prior
> express written consent of The Recording Academy®*. Tickets
> obtained from unauthorized sources or in contravention of the
> terms and conditions of this ticket or applicable law will not be
> honored, and their holders will be deemed trespassers.

Authorized Holders acknowledge and agree to be bound by this ticket policy when they order
tickets and again when they pick up tickets in person.

The Recording Academy further informed VIP Concierge and you that attempting to resell or
otherwise commercially exploit tickets to the GRAMMY Awards telecast without The
Recording Academy's express written consent is unlawful and subjects VIP Concierge and you
to legal liability for, among other things, injunctive relief, inducing breach of contract, unfair
competition, false advertising, unjust enrichment, and inducement to trespass. Any person who

Proskauer»

Mr. Craig Banaszewski
VIP Concierge, Inc.
January 5, 2015
Page 2

acquires a ticket without The Recording Academy's express written consent and attempts to
enter the GRAMMY Awards telecast will be denied entry and subject to arrest.

You responded to these admonitions with immaterial excuses that VIP Concierge outsources
"many functions" to Indian contractors and its website does not refer expressly to the GRAMMY
Awards. You falsely asserted that VIP Concierge's website provides information about tickets to
the GRAMMY Awards telecast merely "for informational purposes" and argued that "just
because an event is listed here, it does not necessarily mean that we are selling tickets for that
event." None of these excuses protects VIP Concierge and you from legal liability. The
Recording Academy did not further pursue the matter because VIP Concierge took down the
offer to sell tickets to the GRAMMY Awards telecast.

Despite having been warned, VIP Concierge is unlawfully offering to resell tickets to the
GRAMMY Awards telecast on February 8, 2015 at STAPLES Center. VIP Concierge is up to
its old games. In a feeble attempt to mask the obvious, VIP Concierge's website refers to
**"Music's Biggest Night"** at STAPLES Center on February 8, 2015 – the date and location of the
upcoming GRAMMY Awards telecast. The reference to "Music's Biggest Night" creates rather
than avoids legal liability: The Recording Academy owns a federal service mark registration for
"Music's Biggest Night." VIP Concierge is also infringing The Recording Academy's
trademark for the Gramophone logo by displaying it on the website without permission.

The Recording Academy will not tolerate any further unlawful conduct related to the attempted
or actual resale or other commercial exploitation of tickets to the GRAMMY Awards telecast. It
hereby demands that VIP Concierge and you immediately and permanently take down from all
of its websites all direct and indirect references to the GRAMMY Awards telecast, including
references to "Music's Biggest Night" and the Gramophone logo. In addition, The Recording
Academy demands that:

(i)     VIP Concierge and you stipulate to entry of a permanent injunction prohibiting
        VIP Concierge and you (and any other company engaged in the business of
        selling tickets to entertainment events in which you own an interest, directly or
        indirectly) from attempting to resell or otherwise commercially exploit tickets to
        the GRAMMY Awards telecast;

(ii)    You provide a declaration under penalty of perjury stating (a) the name, mailing
        address, email address, and telephone number of each source of tickets to the
        GRAMMY Awards telecast resold or commercially exploited by VIP Concierge
        and you (and any other company engaged in the business of selling tickets to
        entertainment events in which you own an interest, directly or indirectly), and (b)
        the year, level, row, seat number, acquisition price, and resale price of each ticket
        to the GRAMMY Awards telecast resold or otherwise commercially exploited by
        VIP Concierge and you (and any other company engaged in the business of

Proskauer»

Mr. Craig Banaszewski
VIP Concierge, Inc.
January 5, 2015
Page 3

selling tickets to entertainment events in which you own an interest, directly or indirectly);[1] and

(iii)    VIP Concierge and you provide all documents, including communications with any person, related to the attempted or actual resale or other commercial exploitation of tickets to the GRAMMY Awards telecast.

With respect to item (i) above, The Recording Academy will refrain from filing with the court a lawsuit and the stipulation to entry of a permanent injunction, provided that VIP Concierge and you (and any other company engaged in the business of selling tickets to entertainment events in which you own an interest, directly or indirectly) do not attempt to resell or otherwise commercially exploit tickets to the GRAMMY Awards telecast in the future.

The Recording Academy views this matter with the utmost seriousness.  VIP Concierge and you should be aware that in prior years, The Recording Academy filed several lawsuits and obtained permanent injunctions and recovered substantial monetary damages against individuals and entities who attempted to resell or otherwise commercially exploit tickets to the GRAMMY Awards telecast without The Recording Academy's permission. Nonetheless, The Recording Academy is hopeful that VIP Concierge and you will avoid needless litigation.

This letter does not constitute and is not intended to be a complete recitation of all of The Recording Academy's claims against VIP Concierge and you, and is written without prejudice to or waiver of The Recording Academy's claims, rights and/or remedies, all of which are hereby expressly reserved.

Sincerely,

Robert H. Horn

cc:    Wayne J. Zahner
       Ann Meckelborg
       Joel R. Feldman
       Charles B. Ortner
       Sandra A. Crawshaw-Sparks

---

[1] The Recording Academy reserves the right to demand disgorgement of profits from the resale of tickets to the GRAMMY Awards telecast as part of any pre-lawsuit settlement depending on the total revenue disclosed in the requested documents.

# EXHIBIT B

SEGAL SKIGEN LLP
LAWRENCE SEGAL [BAR NO. 101339]
WAYNE D. SKIGEN [BAR NO. 100249]
ANDREW D. SHUPE [BAR NO. 240635]
9595 Wilshire Boulevard, Suite 201
Beverly Hills, California 90212-2504
Telephone: (310) 550-4840
Facsimile: (310) 550-4848

Attorneys for Plaintiff Hollywood Entertainment Group LLC

**FILED**
LOS ANGELES SUPERIOR COURT

MAY 17 2013

JOHN A. CLARKE, CLERK

BY AMBER HAYES, DEPUTY

D57 Ralph Dau

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

BC509381

HOLLYWOOD ENTERTAINMENT
GROUP LLC, a Nevada limited liability
company,

        Plaintiff,

    v.

MATTHEW BLAKELY, an individual and
doing business as BLAKELY LEGAL
GROUP, P.C; BLAKELY LEGAL
GROUP, P.C., a California professional
corporation; and DOES 1 through 10,
inclusive,

        Defendants.

Case No. _____

**COMPLAINT FOR:**
1. **BREACH OF ORAL CONTRACT**
2. **BREACH OF IMPLIED WARRANTY**
3. **MONEY HAD AND RECEIVED**

-1-
COMPLAINT

CIT/CASE: BC509381
LEA/DEF#:
RECEIPT #: CCH503057089
DATE PAID: 05/17/13
PAYMENT: $435.00
RECEIVED:
CHECK:
CASH:
CHANGE:
CARD:
$435.00
$0.00
$0.00
$0.00
03:19 PM
3:0

Plaintiff Hollywood Entertainment Group LLC ("Plaintiff") alleges as follows:

## GENERAL ALLEGATIONS

1.     Plaintiff is, and at all material times hereto was, a limited liability company duly organized under the laws of the State of Nevada, doing business as VIP Concierge, Inc., in, among other places, the County of Los Angeles, State of California. Plaintiff is, and at all times material hereto was, engaged in the business of ticket brokerage and the sale of tickets to entertainment, sporting and other events.

2.     Plaintiff is informed and believes, and on that basis alleges, that defendant Matthew Blakely ("Blakely") is an individual residing in the State of California, County of Los Angeles, and is, and at all times material hereto was, engaged in the business of selling tickets to entertainment, sporting and other events. Blakely also does business as Blakely Legal Group, P.C.

3.     Plaintiff is informed and believes, and on that basis alleges, that defendant Blakely Legal Group, P.C. ("Blakely Group") is a California professional corporation through which Blakely conducts business, with its principal place of business in the State of California, County of Los Angeles.

4.     Both Plaintiff and Blakely regularly deal in the goods that are the subject of Plaintiff's claims - to wit, tickets to entertainment, sporting and other events - and hold themselves out as having knowledge peculiar to such goods.

5.     Defendants DOES 1 through 10, inclusive, are sued under such fictitious names because Plaintiff is not aware of their true names, identities or capacities. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants is legally responsible in some manner for the occurrences hereinafter alleged and the injuries sustained by Plaintiff, and that each defendant acted individually for himself, herself, itself, and as the agent for each of the other defendants and, at all material times hereto, was acting within the course and scope of said agency. Plaintiff will amend this complaint if, as and when the true names, identities, and capacities of DOES 1 through 10 are ascertained.

6.     In or about February 2013, numerous prospective customers (collectively "the

Customers") expressed an interest to Plaintiff in obtaining tickets to an event scheduled for February 2013 ("the Event"). In order to obtain tickets for the Event that would be sold to the Customers, Plaintiff entered an oral contract ("the Agreement") with Blakely whereby Blakely agreed to sell to Plaintiff, and Plaintiff agreed to purchase from Blakely, valid tickets ("the Tickets") for the Event at the aggregate price of $89,500. Blakely was aware and understood at the time he contracted with Plaintiff that the purpose for which Plaintiff entered the Agreement was to enable Plaintiff to re-sell the Tickets for a profit. Plaintiff is informed and believes, and on that basis alleges, that Blakely knew and understood that, if Blakely failed to deliver to Plaintiff the Tickets or if the Tickets did not permit the Customers to gain access to the Event, Plaintiff's relationships with the affected customers would be adversely affected and Plaintiff likely would lose the future patronage, business and economic benefits of his relationships with the Customers.

7.     In accordance with the Agreement, on or about February 1, 7 and 8, 2013, Plaintiff paid the aggregate sum of $89,500 to Blakely and to Blakely Group for the Tickets, and Blakely delivered the Tickets to Plaintiff. Accordingly, except as alleged hereinbelow with respect to the invalidity of the Tickets, the Agreement was performed by the parties thereto, and Blakely is estopped to deny the existence and/or enforceability of the Agreement.

8.     Plaintiff thereafter delivered the Tickets to the Customers for their use in gaining admission to the Event. After the Event, however, Plaintiff learned that the Customers were denied admission to the Event because the Tickets were deemed invalid. As a result of the invalidity of the Tickets, Plaintiff was required to refund to the Customers the amount that they had paid to Plaintiff for the Tickets.

9.     Plaintiff notified Blakely that the Tickets were invalid and that the Customers therefore had been denied admission to the Event, and Plaintiff demanded that Blakely refund to Plaintiff the sum of $89,500, which Plaintiff had paid to Blakely for the Tickets.

10.     Blakely and the Blakely Group failed and refused, and have continued to fail and refuse, to refund to Plaintiff the sum of $89,500, or any portion thereof.

SEGAL SKIGEN
LLP

-3-
COMPLAINT

### FIRST CAUSE OF ACTION
**(Breach of Oral Contract – Against Blakely and Does 1-10)**

11.     Plaintiff incorporates by reference paragraphs 1 through 10, inclusive, as though set forth in full herein.

12.     Blakely, in failing to deliver valid tickets that would enable the Customers to gain admission to the Event, breached the Agreement.

13.     Plaintiff has performed all of the terms and conditions on its part to be performed under the Agreement, except as the same may have been excused, waived or prevented by Blakely.

14.     As a direct and proximate result of Blakely's breach of the Agreement, Plaintiff has suffered damages representing the sum of money that it was required to refund to the Customers.  This sum includes the $89,500 paid by Plaintiff for the Tickets plus the profits that Plaintiff would have made and retained in connection with the sale of the Tickets to the Customers if Blakely had performed his contractual obligation.  Blakely was aware of Plaintiff's intention to re-sell the Tickets to the Event at the time that he entered into the Agreement.  The lost profits proximately caused by Blakely's breach of the Agreement, which were a potential loss that was within the reasonable contemplation of the parties at the time of contracting, are in an amount subject to proof at trial but, in all events, exceed $50,000.

15.     In addition, as a direct and proximate result of Blakely's breach of the Agreement, Plaintiff has suffered additional lost profits in connection with business that it has lost and in the future will lose because of damage to its relationships with those through whom Plaintiff markets and sells tickets to entertainment, sporting and other events.  The injury to Plaintiff's business relationships caused by Blakely's breach and the resulting lost profits, which were a potential loss that was within the reasonable contemplation of the parties at the time of contracting, have caused damages in an amount subject to proof at trial but, in all events, exceed $150,000.

16.     Alternatively, Plaintiff is entitled to restitution of the $89,500 that it paid to Blakely, the retention of which by Blakely has unjustly enriched Blakely to the detriment of Plaintiff.

SEGAL SKIGEN
LLP

## SECOND CAUSE OF ACTION
### (Breach of Implied Warranty – Against Blakely and Does 1-10)

17.    Plaintiff incorporates by reference paragraphs 1 to 10, as though set forth in full herein.

18.    Implied in the Agreement was a warranty of merchantability that the Tickets would be fit for their intended purpose, *to wit*, that the Tickets would be valid and enable the Customers to gain admission to the Event.

19.    Blakely breached the warranty of merchantability in that the Tickets were not valid and the Customers were denied admission to the Event.

20.    Plaintiff has performed all of the terms and conditions on its part to be performed under the Agreement, except as the same may have been excused, waived or prevented by Blakely.

21.    As a direct and proximate result of Blakely's breach of warranty, Plaintiff has suffered damages representing the sum of money that it was required to refund to the Customers. This sum includes the $89,500 paid by Plaintiff for the Tickets plus the profits that Plaintiff would have made and retained in connection with the sale of the Tickets to the Customers if Blakely had performed his contractual obligation.  The lost profits proximately caused by Blakely's breach of warranty, which were a potential loss that was within the reasonable contemplation of the parties at the time of contracting, are in an amount subject to proof at trial but, in all events, exceed $50,000.

22.    In addition, as a direct and proximate result of Blakely's breach of warranty, Plaintiff has suffered additional lost profits in connection with business that it has lost and in the future will lose because of damage to its relationships with those through whom Plaintiff markets and sells tickets to entertainment, sporting and other events.  The injury to Plaintiff's business relationships caused by Blakely's breach and the resulting lost profits, which were a potential loss that was within the reasonable contemplation of the parties at the time of contracting, have caused damages in an amount subject to proof at trial but, in all events, exceed $150,000.

23.    Alternatively, Plaintiff is entitled to restitution of the $89,500 that it paid to

-5-
COMPLAINT

Blakely, the retention of which by Blakely has unjustly enriched Blakely to the detriment of Plaintiff.

### THIRD CAUSE OF ACTION
### (Money Had and Received – Against Blakely, Blakely Group, and Does 1-10)

24.   . Plaintiff incorporates by reference paragraphs 1 to 10, as though set forth in full herein.

25.    Within the last two (2) years, Blakely and the Blakely Group became indebted to Plaintiff for money had and received by Blakely and the Blakely Group for the use and benefit of Plaintiff in the sum of $89,500.  Blakely's and the Blakely Group's retention of said sum has unjustly enriched Blakely and the Blakely Group to the detriment of Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Blakely and Does 1-10, and each of them, as follows:

1.    For compensatory damages in an amount subject to proof, but, in any event, in an amount in excess of $250,000;

2.    For restitutionary damages in the sum of $89,500;

3.    For prejudgment interest thereon as allowed by law;

4.    For costs of suit; and

5.    For such other and further relief as this Court deems just and proper.

DATED: May 17, 2013                          SEGAL SKIGEN LLP

By
Wayne D. Skigen
Lawrence Segal
Andrew D. Shupe
Attorneys for Plaintiff

SEGAL SKIGEN
LLP

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lawrence Segal, SBN 101339<br>SEGAL SKIGEN LLP<br>9595 Wilshire Blvd., Suite 201<br>Beverly Hills, CA 90212<br><br>TELEPHONE NO: 310-550-4840  FAX NO: 310-550-4848<br>ATTORNEY FOR (Name): Plaintiff Hollywood Ent. Group LLC | **FILED**<br>LOS ANGELES SUPERIOR COURT<br>MAY 17 2013<br>JOHN A. CLARKE, CLERK<br>BY AMBER HAYES, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central District, Stanley Mosk Courthouse

CASE NAME: Hollywood Entertainment Group LLC v.
Matthew Blakely et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: BC509381 |
|---|---|---|---|
| X Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- X Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is  X is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. X monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive

4. Number of causes of action (specify): 3 - breach of oral contract, breach of implied warranty, money had/received

5. This case ☐ is  X is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 17, 2013

Lawrence Segal, SBN 101339
(TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
   Contract/Warranty Breach—Seller Plaintiff (*not fraud or negligence*)
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case—Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment (*non-domestic relations*)
   Sister State Judgment
   Administrative Agency Award (*not unpaid taxes*)
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
   Declaratory Relief Only
   Injunctive Relief Only (*non-harassment*)
   Mechanics Lien
   Other Commercial Complaint Case (*non-tort/non-complex*)
   Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief from Late Claim
   Other Civil Petition

| SHORT TITLE: Hollywood Entertainment Group LLC v. Matthew Blakely et al. | CASE NUMBER BC509381 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES CLASS ACTION? [ ] YES LIMITED CASE? [ ] YES TIME ESTIMATED FOR TRIAL X [ ] HOURS/ [1] DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | [ ] A6070 Asbestos Property Damage | 2. |
| | | [ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | [ ] A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | [ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | [ ] A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | [ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

SHORT TITLE: Hollywood Entertainment Group LLC v. Matthew Blakely et al.

CASE NUMBER

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| Contract | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☒ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F  Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Hollywood Entertainment Group LLC v. Matthew Blakely et al. | CASE NUMBER |
| --- | --- |

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Hollywood Entertainment Group LLC v. Matthew Blakely et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: Matthew Blakely<br>10250 Constellation Blvd.<br>23rd Floor |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90067 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _Stanley Mosk_ courthouse in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: May 17, 2013

(SIGNATURE OF ATTORNEY/FILING PARTY)

Lawrence Segal

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# EXHIBIT C

Silver, Tracey L.

| | |
|---|---|
| **From:** | Jones, Jennifer L. |
| **Sent:** | Thursday, January 29, 2015 11:03 AM |
| **To:** | Lawrence Segal |
| **Cc:** | Crawshaw-Sparks, Sandra A.; Silver, Tracey L. |
| **Subject:** | RE: Confirmation of Non-Opposition to Motion for Expedited Discovery |

Lawrence,

Thank you for confirming defendants' non-opposition to The Recording Academy's application.  As we discussed, I have no intention of extending the deposition any longer than necessary, but simply wish to confirm defendants' intention to cooperate and provide non-evasive responses to the limited discovery we are requesting.  I understand from our conversation and your email below, that is defendants' intent.

I will advise the Court regarding your status as counsel for defendants.

Sincerely,

**Jennifer L. Jones**
Attorney at Law

Proskauer
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
d 310.284.4509
f 310.557.2193
jljones@proskauer.com

greenspaces
Please consider the environment before printing this email.

---

**From:** Lawrence Segal [mailto:Lawrence@LegalSegal.com]
**Sent:** Thursday, January 29, 2015 10:56 AM
**To:** Jones, Jennifer L.
**Subject:** RE: Confirmation of Non-Opposition to Motion for Expedited Discovery

Jennifer---

Your email correctly states our conversation and reflects the defendants' non-opposition to the limited scope of the draft deposition notice that you sent to me yesterday, as well as the date, time, and duration, with the clarification/caveat that, based upon my understanding, (a) there may not be all that many responsive documents in the defendants' possession,  and (b) all of the specific information and detail that you are seeking may or may not be contained in the limited documents in the defendants' possession or within the person most knowledgeable's  possession.   I don't want the deposition dragging on beyond 3 hours if the testimony or documents produced do not contain 100% of everything that you hope to obtain delineated below.

Nevertheless, in the spirit of cooperation and in the hope that such cooperation will result in expedited settlement discussions, I have been authorized to convey the defendants' non-opposition.

Please note (and advise the court) that I have not yet received a monetary retainer from the defendants, and although I have authority to convey the defendants' non-opposition and willingness to present a PMK at deposition next week, I may not necessarily be counsel of record or be able to provide any responsive documents or appear at the deposition absent the appropriate payment of a monetary retainer in advance, so in any representation to the court in your moving papers as to my statements and capacity, please convey that information.   I will hope to have that addressed and resolved shortly.

Thank you.

Lawrence Segal

# SEGAL
**LAW GROUP**
9595 Wilshire Boulevard, Suite 201
Beverly Hills, California 90212-2504
Tel. 310.550.4840
Fax 310.550.4848
Website: http://www.legalsegal.com

CONFIDENTIALITY NOTICE:
This e-mail transmission and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged as an attorney-client communication or attorney work product.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify the sender and destroy the original transmission and its attachments without reading or saving in any manner.

CIRCULAR 230 NOTICE:
If this communication contains statements concerning taxation, those statements are provided for information purposes only, are not intended to constitute tax advice which may be relied upon to avoid penalties under any federal, state, local or other tax statutes or regulations, and do not resolve any tax issues in your favor. Upon request, we will provide you with express written tax advice after necessary factual development and subject to such conditions and qualifications as we may deem appropriate in the circumstances.

**From:** Jones, Jennifer L. [mailto:jljones@proskauer.com]
**Sent:** Thursday, January 29, 2015 10:38 AM
**To:** Lawrence Segal
**Cc:** Crawshaw-Sparks, Sandra A.
**Subject:** Confirmation of Non-Opposition to Motion for Expedited Discovery

Lawrence,

This email shall confirm our discussion just now that Defendants will not oppose the motion for expedited discovery that The Recording Academy will be filing today seeking a limited 30(b)(6) deposition, in the form previously provided to you, which I have attached again to this email.

As discussed, the deposition will take place at the Los Angeles offices of Proskauer Rose at 10am on Thursday, February 5, 2015.  Any documents responsive to the document request contained in the notice will be produced to me no later than 10am on Wednesday, February 4, 2015.  The deposition will be limited to no more than three hours, provided that documents and testimony provided are sufficient to identify: (a) the source of the unauthorized tickets defendants sold to the February 8, 2015 GRAMMY Awards ceremony (the TICKETS); (b) the details regarding the TICKETS (i.e. level location and seat number); and (c) the identity and contact information for the individuals who purchased the TICKETS from defendants.

Please confirm by reply email that I have accurately represented our agreement.

Thank you,

Jennifer L. Jones
Attorney at Law

Proskauer
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
d 310.284.4509
f 310.557.2193
jljones@proskauer.com

greenspaces
Please consider the environment before printing this email.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message and its attachments are sent from a law firm and may contain information that is confidential and
protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the
sender immediately.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT D

Sandra A. Crawshaw-Sparks, SBN 291101
<scrawshaw@proskauer.com>
Jennifer L. Jones, SBN 284624
<jljones@proskauer.com>
Tracey L. Silver, SBN 287745
<tsilver@proskauer.com>
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:    (310) 557-2900
Facsimile:    (310) 557-2193

Attorneys for Plaintiff
National Academy of Recording Arts &
Sciences, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOLLYWOOD ENTERTAINMENT GROUP LLC, a Nevada Limited Liability Company, d/b/a VIP CONCIERGE, INC.; and CRAIG BANASZEWSKI, an individual,<br><br>Defendants. | Case No.  2:15-cv-594-MMM-MAN<br><br>**NOTICE OF DEPOSITION OF HOLLYWOOD ENTERTAINMENT GROUP LLC, D/B/A VIP CONCIERGE, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) AND REQUEST TO PRODUCE DOCUMENTS** |

1

1   TO ALL PARTIS AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30 plaintiff,

3   National Academy of Recording Arts & Sciences, Inc. ("The Recording

4   Academy®") will take the deposition upon oral examination of Defendant

5   Hollywood Entertainment Group LLC, d/b/a VIP Concierge, Inc.  The deposition

6   will take place on February 5, 2015, at 10:00 a.m. at Proskauer Rose LLP, 2049

7   Century Park East, Suite 3200, Los Angeles, CA 90067.  Pursuant to *Fed. R. Civ. P.*

8   30(b)(6), Hollywood Entertainment Group LLC, d/b/a VIP Concierge, Inc., is

9   directed to designate one or more officers, directors, managing agents or other

10  persons who consent to testify on its behalf concerning each of the Areas of Inquiry

11  set forth in Exhibit A hereto. PLEASE TAKE FURTHER NOTICE that the deposition will take place

12  before a duly authorized notary public or other officer authorized to administer oaths

13  at depositions.

14       PLEASE TAKE FURTHER NOTICE that, pursuant to *Fed. R. Civ. P.*

15  30(b)(2), the deposition will be videotaped.  The Recording Academy also reserves

16  the right to use Livenote or other technology for real-time transcription of the

17  testimony.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

2

1        PLEASE TAKE FURTHER NOTICE that, pursuant to *Fed. R. Civ. P.* 34,

2  Hollywood Entertainment LLC is directed to produce on February 4, 2015, at 10:00

3  a.m. at Proskauer Rose LLP, 2049 Century Park East, Suite 3200, Los Angeles, CA

4  90067 the documents for inspection specified in the Documents to Be Produced set

5  forth in Exhibit A hereto.

6  DATED: _____, 2015    Sandra A. Crawshaw-Sparks

7                          Jennifer L. Jones

                             Tracey L. Silver

8                          PROSKAUER ROSE LLP

9

10                       _____

                          Jennifer L. Jones

11

12                       Attorneys for Plaintiff

                         National Academy of Recording Arts &

                         Sciences, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION OF HOLLYWOOD ENTERTAINMENT GROUP LLC & REQUEST TO PRODUCE DOCUMENTS

### EXHIBIT A

## I.     DEFINITIONS

A.     "THE RECORDING ACADEMY" shall mean plaintiff National Academy of Recording Arts & Sciences, Inc., its present and former officers, governors, agents, attorneys, representatives, servants, and employees.

B.     "YOU" or "YOUR" shall mean or refer to Hollywood Entertainment Group, d/b/a VIP Concierge, Inc., and to any PERSON acting under its direction, or on its behalf, including its agents, attorneys, officers, subsidiaries, assigns, employees, investigators, and/or all PERSONS acting or purporting to act on its behalf.

C.     "DOCUMENTS" shall mean all documents as defined in Evidence Code § 250, including, without limitation, originals and all copies unless identical, regardless of the origin or location, of written, recorded, and graphic matter, however produced or reproduced, formal or informal, including, but not limited to, correspondence, memoranda, drafts, reports, Web pages, electronic communications, financial statements, notes, records, letters, envelopes, telegrams, telephone logs, messages (including e-mail in any form, reports, notice, and memoranda of personal or other telephone conversations and conferences), contracts, agreements, summaries, photographs, phonographs, tapes or other recordings, CD-ROM's, disks, data of sales, drums, printouts, and other data compilations from which information can be obtained (translated, if necessary, through detection devices onto usable form), and other writings or documents of whatever description or kind including attachments or other matters affixed thereto in the possession, custody or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D.     "COMMUNICATION" or "COMMUNICATIONS" shall mean and refer to any original and all copies, unless identical, regardless of origin or location, written, recorded and graphic matter, however produced or reproduced, formal or

1

1  informal, including, without limitation, memoranda, letters, facsimiles, e-mail, notes

2  (including stenographic notes), records, letters, envelopes, telegrams, telephone

3  messages (including reports, notes and memoranda of personal or other telephone

4  conversations and conferences), tape or other recordings of conversations, and any

5  other writings or documents of whatever description or kind with the purpose of

6  communication any message between any PERSONS, including attachments or

7  matters affixed thereto and copies of any of the foregoing in the possession, custody

8  or control of YOU, YOUR counsel or any other person acting on YOUR behalf,

9  including, without limitation, any material described above that originally may have

10  been generated by an party hereto and is now in YOUR possession, custody or

11  control.

12      E.    A DOCUMENT or COMMUNICATION that "REFER" or "REFERS"

13  to a given subject matter is one that, whether directly or indirectly, constitutes,

14  memorializes, contains, concerns, embodies, reflects, identifies, evidences, states,

15  deals with, comments on, responds to, sets forth, describes, analyzes, contradicts, or

16  is in any way pertinent to that subject matter.

17      F.    "IDENTITY" or "IDENTITIES" shall refer to the positive

18  identification of the person or entity at issue, or any information assisting in the

19  positive identification of the person or entity at issue, including, without limitation,

20  name(s), alias(es), home telephone number(s), work telephone number(s), cellular

21  telephone number(s), place(s) of business, home address(es), work address(es), e-

22  mail address(es), and all other information capable of providing the correct

23  identifying information for the person or entity at issue.

24      G.    "PERSON" or "PERSONS" shall refer to any natural person, firm,

25  partnership, association, corporation, governmental agency, bank, trust or other form

26  of legal entity.

27

28

**NOTICE OF DEPOSITION OF HOLLYWOOD ENTERTAINMENT GROUP LLC & REQUEST TO PRODUCE DOCUMENTS**

## II.    AREAS OF INQUIRY

1.    The seat location of, and the name as written by The Recording Academy (if any) on, any tickets that YOU have offered to purchase, sell and/or sold for the 57th Annual GRAMMY Awards ceremony, scheduled for February 8, 2015. 2.    All agreements related to any planned, anticipated or actual purchase, sale, brokering, middling or transferring of any tickets for the 57th Annual GRAMMY Awards ceremony, scheduled for February 8, 2015.

3.    The IDENTITIES of, and contact information for, all PERSONS whose tickets YOU have offered to purchase, sell, broker, middle, or transfer to the 57th Annual GRAMMY Awards ceremony, scheduled for February 8, 2015.

4.    The IDENTITIES of, and contact information for, all PERSONS to whom YOU have offered to sell or sold, brokered, middle, or transferred tickets to the 57th Annual GRAMMY Awards ceremony, scheduled for February 8, 2015.

## III.    DOCUMENTS TO BE PRODUCED

1.    DOCUMENTS and COMMUNICATIONS sufficient to identify any and all GRAMMY tickets, the seat location of, and the name written by The Recording Academy (if any) on, any GRAMMY tickets that YOU have offered to purchase, sell and/or sold to the 57th Annual GRAMMY Awards ceremony, scheduled for February 8, 2015.

2.    DOCUMENTS and COMMUNICATIONS sufficient to identify all agreements related to any planned, anticipated or actual purchase, sale, brokering, middling, or transferring of GRAMMY Awards tickets to the 57th Annual GRAMMY Awards ceremony, scheduled for February 8, 2015.

3.    DOCUMENTS and COMMUNICATIONS sufficient to identify the IDENTITIES of, and contact information for, all PERSONS whose tickets YOU

1 offered to purchase, sell, broker, middle, or transfer to the 57th Annual GRAMMY

2 Awards ceremony, scheduled for February 8, 2015.

3     4.    DOCUMENTS and COMMUNICATIONS sufficient to identify the

4 IDENTIES of, and contact information for, all PERSONS to whom YOU have

5 offered to sell or sold, brokered, middle, or transferred tickets to the 57th Annual

6 GRAMMY Awards ceremony, scheduled for February 8, 2015.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION OF HOLLYWOOD ENTERTAINMENT GROUP LLC & REQUEST TO
PRODUCE DOCUMENTS

# EXHIBIT E

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | David W. Quinto (Bar No. 106232)
  | davidquinto@quinnemanuel.com
  | Aliza M. Reder (Bar No. 233654)
3 | alizareder@quinnemanuel.com
  | Valerie Lozano (Bar No. 260020)
4 | valerielozano@quinnemanuel.com
  | 865 South Figueroa Street, 10th Floor
5 | Los Angeles, California  90017-2543
  | Telephone:  (213) 443-3000
6 | Facsimile:  (213) 443-3100

7 | Attorneys for Plaintiff Academy of
  | Motion Picture Arts and Sciences
8 |

9 |

10 |                    UNITED STATES DISTRICT COURT

11 |                  CENTRAL DISTRICT OF CALIFORNIA

12 |                        WESTERN DIVISION

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California non-profit corporation, | CASE NO. 2:09-cv-00573-DSF-JTL |
| | UNOPPOSED *EX PARTE* APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY; AND |
| Plaintiff, | |
| vs. | MEMORANDUM OF POINTS AND AUTHORITIES |
| CHRISTOPHER M. MCMURRY, individually and doing business as MCMURRY, Inc., et al, | [Declarations of David W. Quinto, Scott Miller, and Norbert A. Meyerkamp and [Proposed] Order filed concurrently herewith] |
| Defendants. | |
| | Trial Date:  None Set |

13 | ACADEMY OF MOTION PICTURE
14 | ARTS AND SCIENCES, a California non-profit corporation,
15 |                  Plaintiff,
16 |       vs.
17 | CHRISTOPHER M. MCMURRY, individually and doing business as
18 | MCMURRY, Inc., et al,
19 |                  Defendants.
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

22569/2784697.1

1    The Academy of Motion Picture Arts and Sciences (the "Academy")
2 hereby respectfully applies *ex parte*, pursuant to <u>Local Rule</u> 7-19, for an Order for
3 Leave to Take Expedited Discovery.

4    The Academy seeks leave (and Defendants do not oppose) to take on
5 an expedited basis limited depositions of three persons: defendant McMurry, Inc.
6 (pursuant to *Federal Rule of Civil Procedure* 30(b)(6)) and Defendants' agents,
7 Allen Thompson and Travcoa Corporation.  The Academy seeks to take the
8 depositions upon three business days' notice and to require the production of
9 narrowly limited categories of documents.

10    This action was filed January 26, 2009.  Defendants have not yet
11 appeared in the action and the parties have not yet held their *Rule* 26(f) conference.
12 The Academy makes this Application on the grounds that Defendants and their
13 agents are unlawfully attempting to sell tickets to the upcoming 81st Annual
14 Academy Awards® ceremony, to be conducted February 22, 2009.  The sale of such
15 tickets is unauthorized and poses a security risk to the Academy's invited guests.
16 The Academy seeks targeted, expedited discovery to learn whose tickets have been
17 or are being offered for sale to prevent a breach of security and trespass at the
18 Academy Awards® ceremony.

19    Good cause exists to grant this unopposed relief on an *ex parte* basis.
20 Defendants are brazenly trafficking in tickets to the 81st Annual Academy Awards®
21 ceremony, to be held at the Kodak Theatre in Hollywood in a little over two weeks.
22 Defendants are attempting to sell, or have sold, four $175,000 packages that consist
23 of little more than a hotel stay and a promised ticket to the Academy Awards®.
24 Security experts have advised the Academy that it must not offer tickets to members
25 of the public and must know the identities of the event's attendees.  The Academy
26 has not yet distributed tickets to the Academy Awards® ceremony and, for security
27 reasons, will not do so until a few days before the event.  Thus, if the Academy can
28 learn the sources of the tickets, it can prevent their unauthorized transfer.  Because

1   the ceremony is just over two weeks away, it is imperative that the Academy obtain

2   leave to serve expedited discovery to quickly determine the sources for Defendants'

3   tickets to prevent trespassers and maintain security at the event.

4              Pursuant to *Local Rule* 7-19, on February 2 and 3, 2009, the Academy's

5   counsel gave notice of this Application and the relief sought to Defendants

6   McMurry Inc., Christopher McMurry and Preston McMurry, by means of e-mail

7   and telefaxed communication to their attorney, Austin Potenza, of Collins, May,

8   Potenza, Baran & Gillespie, P.C. ( address: 201 North Central Ave., Suite 2210,

9   Phoenix, AZ 85004; telephone: (602) 252-6555). Mr. Potenza informed the

10   Academy that Defendants are also represented by James Doroshow, of Liner Grode

11   Stein Yankelevitz Sunshine Regenstreif & Taylor LLP, 1100 Glendon Avenue, 14th

12   Floor, Los Angeles, CA 90024-3503, telephone (310) 500-3412. On February 4,

13   2009, Mr. Doroshow contacted the Academy's counsel and stated that Defendants

14   do not oppose the Academy's application. They intend to provide representatives of

15   McMurry, Inc., pursuant to *Rule* 30(b)(6), to testify. Defendants also believe the

16   Application is necessary to permit the Academy to obtain the discovery it needs

17   from third parties Allen Thompson and Travcoa Corporation.

18              This unopposed Application is based on this Notice of Application, the

19   accompanying Memorandum of Points and Authorities; the Declarations of David

20   W. Quinto (and exhibits thereto), Scott Miller and Norbert A. Meyerkamp filed

21   concurrently herewith; the records and files of this Court; and all other matters of

22   which the Court may take judicial notice.

23   DATED: February 4, 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP

24

25                                    By _____

26                                       David W. Quinto
                                         Attorneys for Plaintiff Academy of Motion

27                                       Picture Arts and Sciences

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Court should grant the Academy leave to take narrowly focused, expedited discovery of Defendant McMurry, Inc. and two third parties acting as its agents to obtain the identity of the entities or individuals seeking to engage in the unauthorized transfer of Academy Awards® tickets. Defendants do not oppose this Application and believe that it is necessary for the Academy to obtain discovery from the third parties.

Defendants are brazenly trafficking in tickets to the upcoming 81st Annual Academy Awards® ceremony. Tickets to the ceremony are by invitation only. Because the Academy Awards® telecast is shown, in whole or in part, in over 200 countries and territories and is the most widely watched entertainment event on television, it would be an attractive target for a celebrity stalker or persons seeking to attract attention to themselves or their cause. For these reasons, among others, the Academy seeks to prevent the public sale of its tickets. The Academy goes to extraordinary lengths to prevent the transfer of its tickets. Most Academy Awards® invitees receive their tickets just one or two days before the show. The Academy distributes tickets at the last minute for security reasons, both to prevent the manufacture of counterfeit tickets and to prevent the unauthorized transfer of tickets.

The Academy Awards® ceremony is a little over two weeks away. It will be held at the Kodak Theatre in Hollywood on February 22, 2009. The Academy has invited its guests to the Academy Awards® ceremony but has not yet distributed any tickets. Therefore, the sooner the Academy obtains the identity of Defendants' ticket sources, the greater the likelihood that the Academy can (1) prevent the source(s) from ever obtaining the physical tickets and (2) prevent trespasses and security breaches at the awards ceremony. The Academy respectfully seeks leave to take three limited, expedited depositions and propound, on an

1    expedited basis, requests for the production of documents at those depositions, to

2    obtain this information.

3                           **Facts**

4         *Academy Awards® Tickets.* The Academy offers Academy Awards®

5    tickets to ticket recipients pursuant to an express contract providing that such tickets

6    may not be transferred. Academy members invited to attend are selected from a

7    lottery. Other attendees are selected by the Academy or its members.[1] The

8    members and other invitees are repeatedly informed of the nontransferable nature of

9    the tickets. Specifically, the Academy Awards® ticket order form, which all

10    recipients are required to sign, explicitly admonishes against requesting tickets

11    "unless you plan to use them personally." That order form also reminds the invited

12    guest that the tickets are nontransferable.[2] When Academy members and other

13    invitees receive their Academy Awards® tickets, they are required to sign a receipt.

14    The receipt states that any person in attendance who is not an invited guest or

15    accompanying an invited guest may be subject to prosecution. By signing the

16    receipt, the recipient also agrees that the tickets are nontransferable, and that if

17    transferred their bearers will be deemed trespassers at the ceremony. The ticket,

18    ticket envelope and accompanying packet of information from the Academy also

19    provide notice of the tickets' nontransferability and penalties for the unauthorized

20    transfer.[3]

21         Tickets for each Academy Awards® ceremony are distributed at the

22    last minute. Almost all Academy Awards® invitees receive their tickets just one or

23    two days before the show. The Academy distributes tickets at the last minute both

24

25

---

26    [1]   Declaration of Scott Miller, dated February 4, 2009 ("Miller Dec."), ¶ 5.

27    [2]   *Id.,* ¶ 6.
      [3]   *Id.,* ¶¶ 7-10.

28

Case 2:15-cv-00594-JFW-AFM   Document 10-2   Filed 01/29/15   Page 36 of 47   Page ID
#:145
Case 2:09-cv-00573-DSF-JTL   Document 1   Filed 02/04/09   Page 6 of 13   Page ID #:75

1  to prevent the manufacture of counterfeit tickets and to prevent the unlawful transfer

2  of tickets.[4]

3          In breach of their agreements not to transfer such tickets, invitees

4  occasionally are induced to sell their Academy Awards® tickets when ticket brokers

5  or event planners offer them tens of thousands of dollars in excess of the face value

6  of the tickets.  The ticket brokers and event planners then resell or transfer the

7  tickets to others, thereby inducing others to trespass at the annual Academy

8  Awards® ceremonies.[5]

9          As a result of such inducements, the Academy annually writes to

10  hotels, asking that they advise their concierges that Academy Awards® tickets may

11  not be transferred; publications, asking that they not carry advertisements offering or

12  seeking Academy Awards® tickets; and commercial ticket brokers, asking that they

13  not broker Academy Awards® tickets and placing them on polite notice that all

14  invitees to the Academy Awards® ceremony receive tickets that are expressly

15  nontransferable.  The letter recipients are also placed on notice of the legal measures

16  the Academy has undertaken to enforce the nontransferability restriction and

17  advised that the Academy enforces its legal rights against anyone found trafficking

18  in Academy Awards® tickets.[6]

19          Because the Academy Awards® telecast is shown, in whole or in part,

20  in over 200 countries and territories and is the most widely watched entertainment

21  event on television, it would be an attractive target for a celebrity stalker or persons

22  seeking to attract attention to themselves or their cause.  For these reasons, among

23  others, the Academy seeks to prevent the public sale of its tickets.[7]  The Academy

24

25  [4]  *Id.*, ¶ 11.

26  [5]  *Id.*, ¶ 12.

27  [6]  *Id.*, ¶ 13.
    [7]  Miller Dec., ¶ 14.

28

Case 2:15-cv-00594-JFW-AFM   Document 10-2   Filed 01/29/15   Page 37 of 47   Page ID
#:146
Case 2:09-cv-00573-DSF-JTL   Document __ Filed 02/04/09   Page 7 of 13   Page ID #:76

1  goes to extraordinary lengths to prevent the transfer of its tickets.  Members found

2  to have sold their tickets are expelled from the Academy.[8]  The Academy has

3  obtained judgments against numerous commercial ticket brokers and one local hotel

4  enjoining them from selling, distributing, or otherwise assisting in the sale and

5  distribution of tickets to the Academy Awards® ceremony.[9]  Every year several

6  persons who enter the Academy Awards® venue with tickets purchased illegally are

7  escorted out or arrested after being interviewed by police officers.[10]

8          The Academy has informed its members who the winners were of its

9  annual lottery to obtain tickets this year, but has not yet provided them with physical

10  possession of the tickets.[11]  The Academy has neither invited, nor otherwise

11  provided tickets to any of the Defendants or their agents, Allen Thompson and his

12  employer, Travcoa Corporation.[12]

13          *Defendants Have Engaged, and Are Attempting to Engage, in the*

14  *Unauthorized Transfer of Academy Awards® Tickets.*  Defendants have engaged,

15  and on information and belief will continue to engage, in the unauthorized sale of

16  Academy Awards® tickets.  Defendants, through their Web site and through their

17  magazine "6," have advertised a custom journey that includes a seven-day stay in

18  Los Angeles with accommodations at a luxury hotel, potential sight-seeing trips, and

19  tickets to the upcoming Academy Awards® ceremony.[13]  The price of each package,

20  which as publicly advertised includes one ticket to the Academy Awards®

21  _____

22  [8]  *Id.*, ¶ 15.

23  [9]  *Id.*
    [10]  *Id.*

24  [11]  *Id.*, ¶ 16.

25  [12]  *Id.*
    [13]  The facts of Defendants' attempts to engage in the unauthorized transfer of

26  Academy Awards® tickets is set forth more fully in the Miller Dec., ¶ 17; and the

27  Declaration of Norbert A. Meyerkamp, dated February 3, 2009 ("Meyerkamp
    Dec."), ¶¶ 4-9.

28

1  ceremony, luxury hotel accommodations for seven days, and a film crew who will
2  allegedly follow the ticket purchasers to and into the ceremony, is $175,000.  Even
3  accounting for the cost of luxury accommodations and other possible activities
4  included with the offer, each ticket to the ceremony is priced in excess of $150,000.

5       Defendants are attempting to sell the tickets through Allen Thompson
6  and Travcoa Corporation, their agents in Orange County, California.[14]  Telephone
7  calls to Defendants placed by Academy investigators expressing interest in
8  purchasing tickets were referred to Mr. Thompson, with Travcoa Corporation, who
9  then offered the ticket packages for sale.[15]  When the Academy's investigators asked
10 whether the duration of the trip package could be reduced, Mr. Thompson informed
11 the investigators that he lacked the capacity to reduce the ticket package or eliminate
12 additional activities.[16]

13      Defendants have engaged in egregious conduct in an attempt to trade
14 on and profit from the Academy's security precautions.  As discussed above, for
15 security reasons, the Academy no longer offers Academy Awards® tickets to the
16 general public.  Just as airlines need to know who is inside each airplane during
17 flight, the need for meaningful security requires that the Academy know who is
18 inside the Kodak Theatre during its awards presentation.  It is only because the
19 Academy has diligently enforced the non-transferability of its tickets at great
20 expense that defendants are able to demand extraordinarily high prices for them.
21 Defendants are seeking to profit from security measures put in place to protect
22 Academy Awards® attendees through deplorable and unlawful means.

23
24 _____
25 [14]   Meyerkamp Dec., ¶¶ 4-9.  Miller Dec., ¶ 17.  Thompson's and Travcoa
26 Corporation's business address is 4340 Von Karman Avenue, Suite 400, Newport
    Beach, CA 92660.
27 [15]   *Id.*, ¶¶ 5, 8.
    [16]   *Id.*, ¶ 7.
28

1       *Defendants Have Refused to Reveal Their Ticket Sources.* On January

2 26, 2009, the Academy filed this suit. The Academy seeks, among other relief, an

3 injunction to prohibit the unauthorized transfer of Academy Awards® tickets. On

4 January 27, 2009, the Academy was contacted by Defendants' attorney, Austin

5 Potenza.[17] Mr. Potenza advised that Defendants have ceased offering their

6 promotion but refused to provide any information at all unless the Academy first

7 dismissed all claims with prejudice.[18] The Academy asked whether, in the interest

8 of a prompt resolution, Defendants would agree to permit the Academy to take

9 limited discovery of Defendants and their agent -- either formally or informally -- to

10 ascertain the identity of the ticket source and related information.[19] Defendants

11 refused to permit the Academy to do so. [20]

12       *The Academy Provided Notice to Defendants of Its Ex Parte*

13 *Application; Defendants Do Not Oppose the Application and Believe It Is Necessary*

14 *to Obtain Third Party Discovery.* On February 2, 2009, the Academy sent an e-mail

15 message to Mr. Potenza informing him that the Academy intended to apply *ex parte*

16 for leave to take expedited discovery concerning the identity of the tickets source(s)

17 and related information from Defendants and related third parties.[21] The Academy

18 seeks to take the deposition of defendant McMurry, Inc. pursuant to *Federal Rule of*

19 *Civil Procedure* 30(b)(6) and Defendants' agents, Allen Thompson and his

20 employer, Travcoa Corporation, potential transferors of Academy Awards®

21 _____

22    [17]  Declaration of David W. Quinto, dated February 4, 2009 ("Quinto Dec."), ¶ 4.

23    [18]  E-mail message chain between David Quinto to Austin Potenza, dated

24 January 27 and 28, 2009, and February 3, 2009, attached to the Quinto Dec., Exh. A.

25    [19]  *See* e-mail message chain between David Quinto and Austin Potenza, dated January 28 and 30, 2009, attached to the Quinto Dec., Exh. B.

26    [20]  *Id.*, Exhs. B and E.

27    [21]  *See* e-mail message from Aliza Reder to Austin Potenza, dated February 2, 2009, attached to the Quinto Dec., Exh. C.

28

1   tickets,[22] on three business days' notice.  The Academy also seeks to propound, on a

2   similarly expedited basis related requests for documents.  On February 3, 2009, out

3   of an abundance of caution, the Academy's counsel telefaxed to Mr. Potenza a copy

4   of its notice provided the previous day.[23]  On February 4, 2009, Defendants' local

5   counsel, James Doroshow, advised the Academy that Defendants do not oppose the

6   Application and believe that it is necessary to permit the Academy to obtain the

7   discovery it needs from third parties Allen Thompson and Travcoa Corporation.[24]

8   This Application followed.

## Argument

## GOOD CAUSE EXISTS TO GRANT THE ACADEMY LEAVE TO TAKE EXPEDITED DISCOVERY

12          The Court has discretion to grant the expedited discovery sought by the

13   Academy.  *See Fed. R. Civ. P.* 26(d).  The Academy respectfully asks the Court for

14   leave to take the deposition, pursuant to *Rule* 30(b)(6), of defendant McMurry, Inc.,

15   and the deposition of third parties Allen Thompson and Travcoa Corporation

16   (Defendants' potential transferors of the tickets), as well as obtain documents

17   concerning the tickets' sources, and buyers thereof, from McMurry, Inc., Mr.

18   Thompson and Travcoa Corporation.  As discussed above, Defendants do not

19   oppose this Application and believe it is necessary to permit the Academy to obtain

20   the discovery it seeks from third parties.

---

[22]   A copy of the respective proposed deposition notice and requests for
production, and the deposition and document subpoenas are attached to the Quinto
Dec., Exhs. F, G, and H respectively.  The Academy respectfully seeks leave to take
this expedited, specific discovery without prejudice to its right to take additional
discovery pursuant to regularly-noticed discovery practice.

[23]   *Id.*, Exh. D.

[24]   Quinto Dec., ¶ 6.

1    A party seeking expedited discovery need only show "good cause" for

2    its requested departure from usual discovery procedures. Schwarzer, et al., *Rutter*

3    *Group Practice Guide: Federal Civil Procedure Before Trial* (The Rutter Group

4    2008), 11:527.1. Good cause may be found where the need for expedited discovery

5    outweighs the prejudice to the responding party. *Id.* at 11:527.1-.3.

6    In this case, the Academy's urgent need for expedited discovery in light

7    of the upcoming Academy Awards® ceremony outweighs any prejudice to

8    Defendants or their agents Mr. Thompson and Travcoa Corporation. First, the

9    administration of justice is served by preventing security risks at the ceremony.

10   With nothing preventing Defendants from continuing their unauthorized transfer of

11   Academy Awards® tickets or advising Defendants' sources simply to sell the tickets

12   elsewhere, expedited discovery will allow the Academy to avoid the irreparable

13   harm arising from the unauthorized transfer of those tickets, including the related

14   trespass and security threat at the Academy Awards® ceremony. Defendants'

15   actions have caused, and continue to cause, harm to the Academy, and will cause

16   harm to the Academy and its invited guests should trespassers gain access to the

17   ceremony. These harms are irreparable and the Academy has no adequate remedy at

18   law. Requiring the Academy to wait the normal time for discovery would

19   jeopardize the safety of the Academy Awards® ceremony, the Academy's invited

20   guests, and the Academy and its employees. If, however, expedited discovery is

21   granted, the Academy will be able to attempt to end the ongoing injury, and prevent

22   future harm, by taking steps vis-à-vis Defendants' ticket sources. Defendants and

23   their agent, on the other hand, are not prejudiced by McMurry, Inc.'s or its agents'

24   disclosure of the identity of the ticket sources -- Defendants do not oppose this

25   Application.

26   Second, any burden on Defendants or their agents to respond to the

27   discovery is minimal. The expedited discovery sought by the Academy seeks

28   specific, limited information: it seeks the name and contact information of the

1  sources from which Defendants received, or expect to receive, nontransferable

2  Academy Awards® tickets and similar information concerning buyers thereof.  The

3  Academy's proposed document requests and depositions will require Defendants and

4  two third parties to answer questions that are extremely narrow in their scope and

5  produce a related, limited universe of documents concerning this information.  The

6  information is unavailable from other sources.

7        Third, obtaining this information will substantially contribute to

8  moving this case forward, possibly toward settlement with Defendants.

9  Finally, the discovery sought from both McMurry and its agents is necessary and not

10  duplicative.  Defendants' counsel has represented that his clients promoted the

11  tickets for sale on their Web site, but has since recanted his clients' story when

12  pressed for additional information concerning the tickets' source.[25]  The Academy's

13  investigators have discovered that Allen Thompson, working through Travcoa

14  Corporation, are working with Defendants and are offering the tickets on

15  Defendants' behalf.[26]  Thus limited discovery from these parties is necessary to

16  ensure the Academy is able to obtain the sources' identity, given Defendants'

17  changing story.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  _____

26  [25] *See* e-mail message from Austin Potenza to David Quinto, dated February 2,

27  2009, attached to the Quinto Dec., Exh. E.
    [26] Miller Dec., ¶ 17; Meyerkamp Dec., ¶¶ 4-9.

28

22569/2784697.1

-9-

Case 2:15-cv-00594-JFW-AFM   Document 10-2   Filed 01/29/15   Page 43 of 47   Page ID
#:82
Case 2:09-cv-00573-DSF-JTL   Document 2   Filed 02/04/09   Page 13 of 13   Page ID#:152

## Conclusion

For the foregoing reasons, the Academy respectfully requests that the Court grant the Academy leave to take expedited discovery into the sources of Defendants' Academy Awards® tickets, and the buyers thereof.

DATED:  February 4, 2009                QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP

                                        By_____
                                            David W. Quinto
                                            Attorneys for Plaintiff Academy of Motion
                                            Picture Arts and Sciences

# EXHIBIT F

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California non-profit corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CHRISTOPHER M. MCMURRY, individually and doing business as MCMURRY, Inc., et al,<br><br>                    Defendants. | CASE NO. 2:09-cv-00573-DSF-JTL<br><br> ORDER GRANTING THE ACADEMY OF MOTION PICTURE ARTS AND SCIENCES' UNOPPOSED *EX PARTE* APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY<br><br>Trial Date:   None Set |

1  **<u>ORDER</u>**

2         Plaintiff Academy of Motion Picture Arts and Sciences (the

3  "Academy") having filed its Unopposed *Ex Parte* Application for Leave to Take

4  Expedited Discovery (the "Application"), the Court having considered the

5  Application, the papers in support thereof; and good cause appearing, the Court

6  ORDERS that:

7         The Academy's Application is hereby GRANTED:

8         1.    The Academy may take a limited deposition in Phoenix,

9  Arizona, upon three business days' notice and require the production of documents,

10  pursuant to *Federal Rules of Civil Procedure* 30(b)(6) and 34, of Defendant

11  McMurry Inc., as set forth in the Declaration of David W. Quinto dated February 4,

12  2009;

13         2.    The Academy may immediately serve a subpoena for the

14  production of documents and deposition of Allen Thompson to be taken in Los

15  Angeles, California upon three business days' notice, as set forth in the Declaration

16  of David W. Quinto dated February 4, 2009;

17         3.    The Academy may immediately serve a subpoena for the

18  production of documents and deposition of Travcoa Corporation to be taken in Los

19  Angeles, California upon three business days' notice, as set forth in the Declaration

20  of David W. Quinto dated February 4, 2009; and

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

-2-

1        4.    Leave to take the aforementioned limited discovery is without

2 prejudice to the right of the Academy to take additional deposition and document

3 discovery as otherwise allowed by the Federal Rules of Civil Procedure and the

4 Local Rules of this Court of the same parties, individuals and entities and additional

5 discovery of other parties, individuals and entities in this matter pursuant to

6 regularly-noticed discovery practice.

7        IT IS SO ORDERED.

8 DATED:  February 6, 2009

9

10    _____

11    Hon. Dale S. Fischer
      United States District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28